UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2302

ODESSA NUNNALLY,

Plaintiff, Appellant,

v.

CHARLES MACCAUSLAND,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, U.S. District Judge]

Before

Torruella, Cyr and Boudin,
Circuit Judges.

Odessa Nunnally on brief pro se.

A. John Pappalardo, United States Attorney, and Karen L.

Goodwin, Assistant United States Attorney, on brief for appellee.

June 10, 1993

Per Curiam. Plaintiff, a former federal employee,

appeals pro se from the district court's decision granting

summary judgment to defendant. The district court found that

plaintiff's suit was barred by her failure to comply with the

30-day limitations period set forth in the Civil Service

Reform Act ("CSRA"), 5 U.S.C. 7703(b)(2). Plaintiff argued

that because of a mental incapacity during the tolling

period, the district court should have permitted her suit to

proceed under the doctrine of "equitable tolling."

Plaintiff's complaint alleged that she was

discharged from her position with the Defense Logistics

Agency ("DLA") after 31 years' service because of a mental

handicap, in violation of the Rehabilitation Act, 29 U.S.C.

791. On cross-motions for summary judgment, the case was

referred to Magistrate-Judge Ponsor. The magistrate found

that plaintiff had earlier sought administrative review of

her claim before the Merit Systems Protection Board ("MSPB"),

as permitted by the CSRA, 5 U.S.C. 7701, 7702. Following

an adverse decision by the MSPB, plaintiff failed to seek

further review in the courts, or in the Equal Employment

Opportunity Commission ("EEOC"), until well after expiration

of the 30-day period permitted for such suits in 5 U.S.C.

7703(b)(2).1 The magistrate held that the CSRA's 30-day

1. Section 7703(b)(2) states the following:
Cases of discrimination subject to the provisions
of Section 7702 of this title shall be filed under

-2-

time limit was "jurisdictional," and thus not subject to

equitable enlargement. Even if subject to tolling, however,

the magistrate held that plaintiff was not entitled to

equitable relief. Plaintiff objected to the magistrate's

legal conclusions, moved to supplement the record with

additional affidavits, and renewed a motion for an

evidentiary hearing. The district judge allowed

supplementation, but declined to hold an evidentiary hearing.

Without directly ruling on the amenability of the statute to

tolling, the district judge held that even if tolling were an

available legal option, plaintiff's mental illness would not

warrant enlargement of the limitations period.

I.

Under the Rehabilitation Act, 29 U.S.C.

794a(a)(1), claims of handicap discrimination are governed by

the procedure set forth in Title VII of the Civil Rights Act

of 1964, as amended by the Equal Employment Opportunity Act

("EEOA"), 42 U.S.C. 2000e-16. Since plaintiff was a

717(c) of the Civil Rights Act of 1964 (42
U.S.C. 2000e-16(c), section 15(c) of the Age
Discrimination in Employment Act of 1967 (29 U.S.C.
633a(c)) and section 16(b) of the Fair Labor
Standards Act of 1938, as amended (29 U.S.C.
216(b)), as applicable. Notwithstanding any other
provision of law, any such case filed under any
such section must be filed within 30 days after the
date the individual filing the case received notice
of the judicially reviewable action under section
7702.

-3-

classified civil service employee, her claim is also

controlled by the procedures established for federal

employees under the CSRA.

The Supreme Court has ruled that the statutory

filing deadline applicable to federal employee suits under

the EEOA, 42 U.S.C. 2000e-16(c),2 are subject to equitable

tolling. Irwin v. Veteran's Admin. Regional Office, 498 U.S.

89, 111 S. Ct. 453 (1990). While the opinion presents some

interpretive difficulties, it states that statutory filing

deadlines governing suits against the Government "are subject

to the same rebuttable presumption of equitable tolling

applicable to suits against private defendants." Irwin, 111

S. Ct. at 457; see Oropallo v. United States, Dkt. No. 92-

1983, Slip op. at 13 n.5.

The CSRA limitations period in issue here is not

only similar to, but intersects with, the EEOA provision

directly addressed in Irwin. Together the two statutes

2. 42 U.S.C. 2000e-16(c) provided in relevant part:
Within thirty days [now ninety days] of receipt of
notice of final action taken by a department,
agency, or unit referred to in subsection (a) of
this section, or by the [EEOC] upon an appeal from
a decision or order of such department, agency or
unit on a complaint of discrimination ... or after
one hundred and eighty days from the filing of the
initial charge with the [agency] or with the [EEOC]
on appeal from a decision ... of such department,
agency or unit ... an employee or applicant for
employment, if aggrieved by the final disposition
of his complaint, or by the failure to take final
action on his complaint, may file a civil action as
provided in section 2000e-5 of this title ....

-4-

provide a series of interdependent supplementary and parallel

channels for federal employees seeking administrative review

of claims alleging prohibited discrimination.3 The statutes

expressly cross-reference one another, conditioning the

number and sequence of open avenues of administrative and

court review on the employee's status and the nature of the

3. The interdependence of the two statutes is rooted in
their histories, which have been well documented elsewhere.
The provision at issue in Irwin, 717 of the EEOA, 42 U.S.C.

2000e-16, was added to the civil rights laws in 1972
because Congress was persuaded that federal employees had no
effective administrative and judicial remedies. Brown v.

General Servs. Adm., 425 U.S. 820, 825-31 (1976). It was

then administered by the Civil Service Commission ("CSC"),
and contained the exclusive administrative remedy for federal
employee discrimination claims. Brown, 425 U.S. at 820. In

1978, however, responding to continued discontent, Congress
transferred jurisdiction over federal employee discrimination
claims brought under the EEOA from the CSC to the EEOC.
Congress also adopted the CSRA, abolished the CSC, and
established the MSPB, as one of two agencies in its place.
See generally Barbara L. Schlei & Paul Grossman, Employment

Discrimination Law 1188-90 (2d ed. 1983) (collecting

legislative history). Although the CSRA and EEOA contain a
division of jurisdiction between the two agencies, there is
also substantial interplay and overlap. 5 U.S.C. 7702.
Depending on status and type of claim, federal employees may
have up to five options for pursuing a discrimination claim.
5 U.S.C. 7701, 7702, 7121. See Lee M. Modjeska,

Employment Discrimination Law 2.7 (2d Ed. supp. 1991).

The legislative history to 7703(b)(2) seems to contain few
clues indicating any separate purpose for the 30-day
deadline, see, e.g., S. Rep. No. 969, 95th Cong., 2d Sess.

63-64, reprinted in 1978 U.S.C.C.A.N. 2723, 2785-86. And in

1991, when Congress increased from 30 to 90 days the time
allotted for judicial review under 42 U.S.C. 2000e-16(c),
it simply assumed that the new time limits would apply to
all federal employees with Title VII claims against the
federal government. Sen. Rep. on Pub. L. No. 102-166 114,
reprinted in 1991 U.S.C.C.A.N. 549, 623.

-5-

claim. 42 U.S.C. 2000e-16(a) to (c); 5 U.S.C. 7701-

7703.

Plaintiff here initially sought review of her

termination before the Merit Systems Protection Board

("MSPB"). 5 U.S.C. 7701, 7702.4 Her case was assigned

to an administrative judge who affirmed the agency. She then

had an option to seek further review before the MSPB's full

Board, a district court, or the EEOC. She chose full Board

review, and her petition was denied. Again, plaintiff faced

an option. She had thirty days to seek review in a district

court or in the EEOC. 5 U.S.C. 7703(b)(2), 42 U.S.C.

2000e-16(c). It was at this juncture, the government

contends, that she took a late step not subject to equitable

tolling. She filed her petition with the EEOC nine months

late (which the EEOC treated as an untimely appeal and

denied) and filed in the district court a little more than

three months after that. Had plaintiff instead initially

sought EEOC review, and then taken a late step from the EEOC

4. As a permanent employee covered by 5 U.S.C. 7511(a)(1),
plaintiff here seems to have had an initial option of
pursuing her disability discrimination claim through the
agency's EEO grievance procedure with a choice of appeal to
either the EEOC or the MSPB, or bringing her claim directly
to the MSPB. If she was subject to a bargaining agreement
with a grievance procedure, she would have had additional
options. 5 U.S.C. 7103, 7111, 7121, 7701-7702; 42 U.S.C.
2000e-16(a) to (c). See Viniertos v. United States, 939 F.

2d 762, 767-768 (9th Cir. 1991) (describing options open to
federal employees under Labor-Management Relations Act). It
is not clear to us by which method plaintiff's case began in
the DLA, but no issue has been raised concerning it.

-6-

to court, the case would have been on all fours with the

facts in Irwin.

We see no principled reason for failing to extend

Irwin's rebuttable presumption to the instant filing

deadline. The only arguments to the contrary below were

similar to those rejected in Irwin, and the government has

not renewed them here. Allowing equitable tolling of one but

not the other of these interrelated administrative steps

could encourage untoward forum shopping, especially in light

of the short time periods involved. Cf. Johnson v. Burnley,

887 F.2d 471, 477 (4th Cir. 1989), reh'g granted en banc,

1990 U.S. LEXIS 350 (in pre-Irwin decision involving same

statutes, "it makes no sense to provide the possibility of

equitable tolling of the 30 day deadline for one plaintiff

but not the other merely because of the different procedural

routes taken ... prior to their arrival in federal district

court.")

Accordingly, we join those courts which have held,

under the authority of Irwin, that the limitations period in

5 U.S.C. 7703(b)(2) may be subject to equitable tolling in

an appropriate case. See Williams-Scaife v. Department of

Defense Dependent Schools, 925 F.2d 346 (9th Cir. 1991)

(holding that Irwin effectively overruled all prior Ninth

Circuit cases which had denied equitable tolling under

statutes and regulations relating to federal employee

-7-

discrimination suits, including one which had denied tolling

under 5 U.S.C. 7703(b)(2), Lofton v. Heckler, 781 F.2d

1390, 1392 (9th Cir. 1986)); Ware v. Frank, 1992 U.S. Dist.

LEXIS 1398 (E.D. Pa.) (5 U.S.C. 7703(b)(2) is subject to

equitable tolling under Irwin), aff'd without op., 975 F.2d

1552 (3d Cir. 1992); Doberstein v. St. Paul Dist. of IRS,

1992 U.S. Dist LEXIS 2391 (D. Minn.) (5 U.S.C. 7703(b)(2)

subject to equitable tolling under Irwin). We are aware of

only one decision since Irwin which argues to the contrary.

Dean v. Veteran's Admin. Regional Office, 943 F.2d 667, 669-

70 (6th Cir. 1991), vacated on other grounds, 112 S. Ct. 1255

(1992). However, in Dean the instant issue was not a

dispositive one, and the court there faced a prior panel's,

pre-Irwin, decision. "If we were writing on a clean slate,

we might well be persuaded [otherwise]." Dean, 943 F.2d at

670. While we are mindful, too, of the well-reasoned pre-

Irwin opinion of King v. Dole, 782 F.2d 274 (D.C. Cir.),

cert. denied, 479 U.S. 856 (1986), relied on by the

magistrate, we think that Irwin requires a different

result.5

5. King's conclusion that 5 U.S.C. 7703(b)(2) was

"jurisdictional" and thus not subject to equitable tolling
was based on earlier cases holding other time provisions in
the CSRA "jurisdictional," and interpretations of the instant
statutory language similar to the those rejected in Irwin.

We do not have before us any other section of the CSRA and
must, in any event, follow Irwin's adoption of a "more

general rule," presuming that once Congress has waived
sovereign immunity, there is "little, if any, broadening" of

-8-

II.

While Irwin increased the number of statutes to

which equitable tolling may be applied, it cautioned that

federal courts have "typically extended equitable relief only

sparingly." Irwin, 111 S. Ct. at 457. Relief from

limitations periods through equitable tolling thus remains

subject to careful case-by-case scrutiny.

Plaintiff's argument for equitable tolling below

was based on the debilitating effects of her alleged insanity

during the filing period. We have declined to adopt an

"absolute rule of tolling on insanity grounds." Lopez v.

Citibank, N.A., 808 F.2d 905, 906 (1st Cir. 1987). Moreover,

since the plaintiff in Lopez had been actively represented by

counsel in administrative proceedings during his alleged

period of illness, we held:

It ... seems unlikely [plaintiff's] illness
deprived his counsel of the knowledge or consent
needed to file a court complaint .... In such
circumstances, we believe a federal court should
assume that the mental illness was not of a sort
that makes it equitable to toll the statute -- at
least absent a strong reason for believing the
contrary.

the waiver by subjecting the statute to equitable tolling.
Irwin, 111 U.S. at 457. We note, too, that the King court

did not face the precise statutory incongruity we face here,
since it had earlier determined the time limit in 42 U.S.C.
2000e-16(c), too, was "jurisdictional." King, 782 F.2d at

274 n.3. The latter decision has now been overruled by
Irwin.

-9-

Lopez, 808 F.2d at 907. Lopez, however, did not adopt an

absolute rule against tolling every limitations period on

insanity grounds in all circumstances. The cases cited by

the district court which suggest such a bar involved

different statutes and substantive concerns, with typically

longer limitations periods.

In holding that mental illness provides an

available ground for equitable tolling here, we note that we

are dealing with a broad remedial statute, the Rehabilitation

Act of 1973. Cf. Bassett v. Sterling Drug, Inc., 578 F.

Supp. 1244, 1246-47 (S.D. Ohio 1984) (mental incompetence is

more appropriate basis for equitable tolling under ADEA than

under Federal Tort Claims Act).6 Moreover, we deal with a

case in which mental illness or instability is "the very

disability that forms ... the basis for which the claimant

seeks [relief]." Canales v. Sullivan, 936 F.2d 755, 758 (2d

Cir. 1991) (quoting Elchediak v. Heckler, 750 F.2d 892, 894

(11th Cir. 1985)) (SSDI benefit proceeding). Under these

circumstances, we think an absolute rule barring equitable

tolling for a plaintiff's insanity might conflict with the

6. The district court relied in part on caselaw language
directed at limitations periods in a variety of other areas
including the Federal Torts Claim Act and the Securities
Exchange Act of 1934, where plaintiffs urged that mental
disabilities prevented them from discovering a tort or fraud
for more than several years. Different substantive concerns
and the purposes of the limitations provisions in such cases
may dictate a different result. Our holding is confined only
to the statute and claim before us.

-10-

substantive purposes of the Act. Finally, we deal with a

very short filing period, thirty days.

In closely analogous contexts, similarly short

filing periods under the EEOA have been recognized as

amenable to tolling on insanity grounds, albeit only if the

federal employee's proof passes very rigorous tests. These

cases, like Lopez, eschew reliance solely on a diagnosis.

Rather, they analogize to state standards for determining

incompetence, inquiring whether the particular plaintiff's

illness rendered him "unable to protect his legal rights

because of an overall inability to function in society,"

Decrosta v. Runyon, 1993 U.S. Dist. LEXIS 5006 (N.D.N.Y.); or

whether plaintiff is unable to manage his business affairs,

or to comprehend his legal rights and liabilities, Miller v.

Gould, 1992 U.S. Dist. LEXIS 7299 (N.D. Ill.); Kien v. United

States, 749 F. Supp. 286 (D.D.C. 1990); Speiser v. U.S. Dep't

of HHS, 670 F. Supp. 380, 384 (D.D.C. 1986), aff'd, 818 F.2d

95 (D.C. Cir. 1987). Equitable relief is denied if the

plaintiff was able to engage in rational thought and

deliberate decision making sufficient to pursue his claim

alone or through counsel. Compare Decrosta, 1993 U.S. Dist.

LEXIS at 5006 (in handicap discrimination suit, after

preliminary evidentiary hearing, plaintiff denied equitable

relief from time limits in regulation because his "major

depressive" disorder was not shown to have impeded his

-11-

ability for rational thought and action), with Miller, 1992

U.S. Dist. LEXIS at 7299 (evidence in handicap discrimination

suit sufficient to withstand summary judgment on limitations

grounds where plaintiff raised genuine issue as to whether

his manic-depressive illness rendered him incapable of

conducting his affairs or understanding his status); see also

Kien, 749 F. Supp. at 286 (in handicap discrimination suit,

tolling denied where borderline personality disorder did not

render plaintiff incapable of handling his own affairs);

Speiser (in mental handicap discrimination suit, diagnosis of

Atypical Depression leading to hospitalizations not

sufficient for equitable tolling where plaintiff was aware of

facts and able to communicate with counsel).7

Applying these rigorous standards, we undertake a

plenary review of the facts, as required on review of a

summary judgment, "in the light most flattering to the

7. The government also argued that because mental disability
is not mentioned as a possible reason for tolling in Irwin,

it cannot be used as a tolling factor. A fair reading of
Irwin, however, shows that the Court did not undertake an

exhaustive list of factors that may be considered in the
equitable weighing process. In addition to the recent cases
mentioned in the text, in other contexts courts have
considered the merits of equitable tolling claims on insanity
grounds since Irwin. See, e.g., Char v. Matson Terminals

Inc., 1992 U.S. Dist. LEXIS 21077 (D. Hawaii) (after Irwin,

"mental incompetency may equitably toll the statute of
limitations, but only in appropriate cases"). We also
reject, as neither intended by Irwin nor dictated by caselaw

trends, the government's alternative suggestion that we apply
a rule denying equitable tolling on insanity grounds unless
plaintiff proves one or more predetermined plus factors.

-12-

[plaintiff] indulging all reasonable inferences in [her]

favor." Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990)

(citation omitted).8 While not free from doubt, we find

that plaintiff's evidence raises a genuine issue of fact as

to whether her mental condition may have so disordered her

ability to reason and function in society, as to amount to

"strong reason why, despite the [earlier] assistance of

counsel, [s]he was unable to bring suit." Lopez, 808 F.2d at

907.

The relevant time period here begins in May, 1988

when plaintiff's petition for review by the full MSPB was

dismissed, through March, and then November, 1989, when

plaintiff appeared, pro se, seeking review before the EEOC

and the district court. Diagnoses prior to that time were

only of adjustment and personality disorders. In May, 1987,

however, shortly after she was fired from the DLA, plaintiff

reportedly suffered a "schizophrenic reaction." By then her

case was pending before the MSPB. Although she was

represented by an attorney there, she inexplicably failed to

appear for a scheduled hearing and missed two filing

deadlines. Her then attorney attempted to excuse these

defaults as caused in part by plaintiff's medical

difficulties.

8. Pro se filings are held to a less stringent procedural

standard than others. See, e.g., Estelle v. Gamble, 429 U.S.

97, 106 (1976).

-13-

In July, 1989, plaintiff was taken to see a

psychiatrist by a mental health social worker who specializes

in the homeless.9 Describing plaintiff as "nearly a street

person," the psychiatrist diagnosed her as probable paranoid

schizophrenic.10 Plaintiff's thought pattern was

"discursive, at times illogical, circumlocutional and highly

evasive." She was suffering from auditory hallucinations,

"severely impaired by her illness and ... so paranoid that

she's not getting help." In addition to his own

observations, the psychiatrist relied on and reported those

of the social worker, who had monitored plaintiff for the

previous eight months, and written accounts from plaintiff's

siblings of plaintiff's hostile, delusional, evasive and

indecisive behavior. The psychiatrist concluded that

plaintiff's condition was of "at least" a year's duration. A

non-examining psychologist who reviewed plaintiff's medical

records reported that they all "fit[] a woman with a long

standing schizophrenic disorder possibly of the paranoid type

whose life has progressively fallen away from her due to the

9. Plaintiff lost her right to an immediate pension by
virtue of her termination for "cause" by the DLA. She was
apparently evicted from her apartment in what was described
as a "hostile" scene and is unable to find employment.

10. Paranoid schizophrenia is broadly defined as a psychotic
disorder causing hallucinations and other major disturbances
in thought, mood, perception, orientation, memory, and
behavior, and characterized by one or more systematized
delusions of persecution or danger. Sloane-Dorland Annotated
Medical-Legal Dictionary, supp. at 467-68 (1992).

-14-

depredations of [her] illness." He described the condition

as "crippling and exceedingly disorienting" and causing

"massive disorganization."

If plaintiff was represented by counsel at all

during this time (which we cannot tell from the record) she

was apparently not aware of it. The social worker reported

that she kept "insisting that [the social worker] help her

petition this work release through the court system when it

has already been done and is a finished case." In her brief

on appeal here plaintiff alleges for the first time that in

fact she was not represented by counsel after the termination

of the MSPB action.

While not all the evidence points in the same

direction,11 we think it sufficient, if proved, to raise a

genuine issue of fact as to whether plaintiff's mental

condition rendered her incapable of rationally cooperating

with any counsel, and/or pursuing her claim on her own during

the limitations period.

11. We note that despite his other conclusions, the
examining psychiatrist found that plaintiff was competent to
handle her own money. Such a finding might, in other
circumstances, give us pause. However, given the evidence of
plaintiff's extremely limited financial means, the likely
unavailability of any guardian able or willing to serve
(plaintiff is unmarried and receives "general relief"), and
current cutbacks in delivery of state social services, we do
not find it conclusive. Cf. Bassett, 578 F. Supp. at 1248

(in suit under ADEA, mental incompetence will toll EEOC
filing period only for that period when claimant was
adjudicated incompetent or institutionalized under a
diagnosis of mental incompetence).

-15-

We express no view as to the likely outcome of this

issue on the merits. We note that plaintiff has requested a

preliminary evidentiary hearing on the issue. The decision

to hold such a hearing as a means of "prevenient testing" of

the evidence, where as here there is no objection to it, is

entirely within the trial court's discretion. Rivera-Gomez

v. De Castro, 900 F.2d 1 (1st Cir. 1990). We note, too, that

other motions remain pending in this case. We express no

view as to the outcome of any remaining issue.

For the reasons stated, the summary judgment

against plaintiff is vacated and the case remanded for

further proceedings.

-16-